NEW JERSEY INSTITUTE OF TECHNOLOGY, PETITIONER-APPELLANT, v. CITY OF NEWARK AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 11, 1978 — Supplemental Briefs Filed October and November 1978 — Decided December 27, 1978.

Before Judges ALLCORN and BOTTER.

*Mr. Robert A. Giegerich* argued the cause for appellant (*Mr. Louis A. Ruprecht,* attorney).

*Mr. Melvin Simon,* Assistant Corporation Counsel, argued the cause for respondent City of Newark (*Mr. Salvatore* Perillo, Corporation Counsel, attorney).

*Mr. John J. Degnan,* Attorney General, filed a brief *amicus curiae* (*Mr. Stephen Skillman,* Assistant Attorney General, on the brief).

The opinion of the court was delivered by

BOTTER, J. A. D. The New Jersey Institute of Technology (N. J. I. T.), formerly called the Newark College of Engineering (NCE), appeals from a judgment of the Division of Tax Appeals which upheld property taxes imposed by Newark on two parcels. N. J. I. T. had filed tax appeals for each parcel claiming that the properties were exempt from taxation under *N. J. S. A.* 54:4–3.3, as property of trustees for the support of public schools, and under *N. J. S. A.* 54:4–3.6, as property actually used for colleges, schools, academies or seminaries. On this appeal N. J. I. T. has expressly abandoned its reliance on *N. J. S. A.* 54:4–3.6, no longer contending that the properties were in actual use as educational facilities although originally acquired for such purposes. On this appeal N. J. I. T. initially relied solely on its contention that it is an "instrumentality of the State and property owned by it is public property and, therefore, exempt from taxation via the provisions of *N. J. S. A.* 54:4–3.3."

In a written opinion, the judge of the Division of Tax Appeals rejected the contention that N. J. I. T. was an instrumentality of the State and as such was entitled to a tax exemption under *N. J. S. A.* 54:4–3.3. This, despite the fact that the State furnished approximately $12 million of N. J. I. T.'s $14 million budget in 1975, and $13 million of its $15 million budget in 1976. The opinion also cited other facts in the record to show extensive state control, namely, appointment by the Governor of the board of trustees, pursuant to *N. J. S. A.* 18A:64E–4, and various powers exercised by the Department of Higher Education.

The State has a considerable investment in the management and operation of N. J. I. T. NCE is expressly listed as a public institution of higher education, along with "the

six state colleges," county colleges, "Rutgers, the state university," "the industrial schools," and other public educational institutions. *N. J. S. A.* 18A:62–1. But this very statute, *N. J. S. A.* 18A:62–1, distinguishes *NCE* from "the six state colleges" and Rutgers University. N. J. I. T. is organized pursuant to *N. J. S. A.* 18A:64E–1 *et seq.,* which authorizes the establishment of "schools for industrial education." As the Attorney General contends in his brief filed at our request, N. J. I. T. is essentially an educational institution of a "local school district." *N. J. S. A.* 18A:64E–1. In its supplemental brief filed at our request, N. J. I. T. also contends, alternatively, that it is a "school district" for purposes of taxation.

It is completely anomalous for the City of Newark to levy local property taxes on property owned by N. J. I. T., but not because the extensive state financial support has transformed N. J. I. T. into a state agency. N. J. I. T. was originally organized as a school for industrial education pursuant to *N. J. S. A.* 18A:64E–1 *et seq.* and continues to be governed by those provisions. *N. J. S. A.* 18A:64E–1 provides for the initiation of such a school on certification of "the board of education in any local school district" that certain funds have been raised for the purpose, by voluntary contributions, or by municipal taxation and appropriation pursuant to *N. J. S. A.* 18A:64E–2. The Governor and mayor or other chief executive officer of the municipality in which the school is located are *ex officio* members of the governing body. *N. J. S. A.* 18A:64E–4, termed the board of trustees of a school for industrial education. *N. J. S. A.* 18A:64E–6. The statute provides for the appropriation of state *matching* funds for the organization and support of such a school. *N. J. S. A.* 18A:64E–1; *N. J. S. A.* 18A: 64E–8. *N. J. S. A.* 18A:64E–10 and 11 provides for the issuance of *municipal* bonds for capital improvements. See also, *Albert F. Ruehl Co. v. Board of Trustees of Schools for Industrial Education,* 85 *N. J. Super.* 4 (Law Div. 1964),

holding that NCE was governed by bidding laws applicable to local boards of education.

*N. J. S. A.* 18A:67–1 provides that no educational institution in this State shall use "New Jersey" in its name except "schools maintained by the state and the state university of New Jersey." Perhaps the heavy state financial support justifies treating N. J. I. T. as a school "maintained by the state" within the meaning of *N. J. S. A.* 18A:67–1, without making N. J. I. T. a state college, but sufficient to justify using "New Jersey" in its name. In any case, despite its name and principal financing, New Jersey Institute of Technology, embracing, we are told, the Newark Technical School, the Newark College of Engineering and the New Jersey School of Architecture, remains in the eyes of the law essentially an instrumentality of the City of Newark as part of its school district. As property of a local school district not used for private purposes, the tax exemption granted by *N. J. S. A.* 54:4–3.3 applies. Therefore, the assessments and tax levies in question are vacated.

Reversed.